# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| David Edward Cavalieri, <br>     Plaintiff, <br><br> v. <br><br> N. Preston, et al., <br>     Defendants. | ) <br> ) <br> ) <br> )     1:17cv1204 (LMB/JFA) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Before the Court is defendant Mack Bailey's Motion for Summary Judgment ("Motion"). David Edward Cavalieri ("Cavalieri" or "plaintiff"), a Virginia inmate acting pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that he suffered deliberate indifference to his serious medical needs at Sussex II State Prison ("Sussex II"). He has named multiple defendants, many of whom have not yet been served. Bailey's Motion will be granted because Cavalieri failed to exhaust his administrative remedies. Because that determination is fatal to Cavalieri's claims, all defendants will benefit from this ruling: previous orders requiring defendants Andrea Williams and Dr. Lonia Abbott to file motions for summary judgment will be vacated, no further attempts to serve the remaining defendants will be made, and the action will be dismissed with prejudice.

### I. Defendant Bailey's Motion for Summary Judgment

#### A. Cavalieri's Allegations

In this action Cavalieri alleges that various medical providers and administrators at Sussex II violated his Eighth Amendment rights when they failed to provide him with pain medication for several hours after he underwent knee surgery on May 11, 2017, and again when a prescription for back pain was not renewed from August 4 to August 16, 2017. Mack Bailey ("Bailey") was the Assistant Warden at Sussex II when the events relevant to this lawsuit

occurred [Dkt. No. 60].[1] Cavalieri alleges in the amended complaint, the operative complaint in the lawsuit, that Bailey "directly and indirectly cause[d]" Cavalieri's pain and suffering by negligently failing properly to investigate Cavalieri's grievances regarding the medical department's care of his chronic back pain. Am. Compl. [Dkt. No. 19] ("Compl.) ¶6. In turn, this allegedly created "a culture within the medical dept. of indifference to the pain and suffering of prisoners who have substantial and legitimate medical issues." Id. Cavalieri asserts that he submitted "no less than four (4) grievances" regarding his knee and back pain, "yet, Mack Bailey sided each time with the Medical Dept. and [found plaintiff's grievances] 'unfounded.'" Id. He argues that his pain and suffering was known to Bailey, and as a direct result of Bailey's decisions and policies, plaintiff was made to endure pain, suffering, and loss of quality of life, for which Bailey should be held liable for deliberate indifference, negligence, and breach of contract. Id.

B. Background

Evidence supplied by Bailey reveals the following undisputed material facts. On May 11, 2017, Cavalieri underwent orthopedic surgery on his left knee at an outside hospital and was returned to Sussex II that same day. Id. ¶¶ 1-2. Cavalieri was told that the hospital had called in a prescription for Percocet, a narcotic pain medication, and he expected to receive a dose at 5:00 p.m. that afternoon. Id. ¶ 2. He did not receive pain medication until 4:00 a.m. the following day, May 12, 2017. Id. ¶ 9.[2] The medication he received at that time was Norco rather than Percocet,

---

[1] Bailey currently is the Acting Warden Senior at Greensville Correctional Center. Bailey Mem. [ Dkt. No. 61] ¶ 10.

[2] Cavalieri makes much of the fact that Bailey states at one point in his memorandum that the first dose of pain medication was delivered at 4:00 p.m. [Dkt. No. 61] ¶ 17] In the Court's view it appears clear that this was a typographical error. In the same document Bailey lists as an undisputed fact that Cavalieri received the medication at 4 a.m. on the day after he underwent knee surgery. Id. at 2.

2

and the dosage times had been revised. Id. ¶ 14.

On August 3, 2017, the Sussex II medical department allegedly "allowed [Cavalieri's] pain medications and arthritis medication to expire." Id. ¶ 17. Although Cavalieri filed three "Offender Requests" regarding the situation, he was without his Baclofen and Mobic from August 4 until August 16, 2017. Id. ¶ 19.

On May 27, 2017, Cavalieri submitted a Regular Grievance complaining as he does here that on May 11, 2017 the medical department did not provide him with pain medication prescribed by the orthopedic surgeon who operated on Cavalieri's knee. Bailey provided a Level I response on June 8, 2017 determining the grievance to be unfounded. Bailey Aff. ¶ 9. In that response he explained that medications and orders written by outside physicians are treated as recommendations, and the medication that was supplied to Cavalieri had been prescribed by the institutional physician. Id. As part of Bailey's investigation into Cavalieri's complaint, he consulted Health Services Administrator D. Lawson who explained: "Mr. Cavalieri #1424382 was prescribed Percocet at the hospital. We do not use Percocet in DOC as it is a highly abused drug. The patients return from the hospital with recommendations from the outside physicians and our providers approve them. The medical doctor here ordered him Norco 5/325mg for pain instead of Percocet. The medication arrived from the back up pharmacy after the nursing staff completed pill call. He was administered his first dose @0400. He also came to medical to see the physician the morning after surgery and the doctor wrote him an order for an extra dose of pain medication in addition to the dose he received that morning. The order was written related to the dose he did not receive after arrival to the institution from surgery." Id.; Enc. C. There is no evidence in the record of plaintiff pursuing this grievance to Level II.

On August 3, 2017, Cavalieri submitted another Regular Grievance, complaining that the policy that required him to be medically evaluated before prescriptions for his back pain

3

medications were renewed amounted to an "unethical predatory business practice" that was "perhaps illegal." Id. ¶ 11; Enc. D. Cavalieri asserted that his conditions of chronic back pain and mobility issues caused by lower-lumbar arthritis and a herniated disk do not need to be evaluated every three months, and he requested written confirmation that there was a policy with regard to his specific health care requirements that supported such evaluation. Id. Bailey provided a Level I response on August 29, 2017, determining the grievance to be unfounded. He stated that investigation had revealed that Health Services Administrator A. Williams had explained to Cavalieri that while he did claim to have chronic back pain, that condition is not considered a chronic care condition, like asthma, hypertension, diabetes, HIV or hepatitis C. Id. Plaintiff did not pursue this grievance to Level II.

Bailey attests that he based each of his responses to Cavalieri's grievances on review of information provided to him by both health care staff and policies governing the issues. Id. As Bailey explained, he was not personally involved in any of the decisions regarding what medications to prescribe to Cavalieri, nor was he involved in timing the dispensing of the medications, and he learned about these issues only after Cavalieri filed his grievances. Bailey Aff. ¶ 11. Bailey did not interfere with Cavalieri's medical care and treatment, and did not make any decisions respecting that treatment. Instead, he relied on the health care providers to make all treatment decisions. Bailey's role was limited to responding to grievances Cavalieri filed after the events alleged had already taken place. Id. ¶ 12.

Bailey filed his Motion for Summary Judgment with a supporting Memorandum of Law and affidavits on June 8, 2018, arguing that he is entitled to summary judgment because: (1) the complaint fails to allege an adequate level of his personal involvement with the deprivation of Cavalieri's rights; (2) the complaint states no claim of an Eighth Amendment violation; (3) Cavalieri's claims are barred because he failed to exhaust his administrative remedies before

bringing this lawsuit; and (4) he is entitled to qualified immunity [Dkt. Nos. 60-61]. Bailey provided Cavalieri with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K [Dkt. No. 62]. Cavalieri has responded [Dkt. Nos. 74-75].

### C. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc's Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at

587.

### D. Analysis

It takes little discussion to conclude that Bailey is entitled to summary judgment for two reasons. First, Cavalieri's failure to complete the administrative exhaustion of his claims is fatal to his ability to pursue them in federal court. And second, even if these claims had been exhausted, Bailey could have no liability for violating Cavalieri's Eighth Amendment rights because there is no evidence in the record that he was involved in any of the medical decisions at issue.

#### 1. Lack of Administrative Exhaustion

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). The PLRA requires "proper" exhaustion, which demands "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. In the context of prisoner suits, proper exhaustion provides prisons the opportunity to correct their errors before being hauled into federal court, reduces the quantity of prisoner suits by either granting relief at the administrative level or persuading prisoners not to further pursue their claim in a federal court, and improves the quality of the prisoner suits that are filed in federal court by creating an administrative record for the court to reference. Id. The benefits of proper exhaustion are only realized if the prison grievance system is given a "fair opportunity to consider the grievance" which will not occur "unless the grievant complies with the system's critical procedural rules." Id. at 95; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir.

2008). As the Supreme Court has noted, if a prisoner could properly exhaust his claims without complying with the procedural rules of the prison's grievance system, a prisoner who did not want to participate in the prison grievance process could avoid the process altogether by simply filing a prison grievance he knew would be dismissed for procedural deficiency. See Woodford, 548 U.S. at 96. To prevent this type of abuse, this circuit has held that a prisoner cannot exhaust his administrative remedies by failing to follow the required procedural steps, and the proper return of an improperly filed grievance does not serve to exhaust a prisoner's administrative remedies. See Moore, 517 F.3d at 725, 729.

Pursuant to the Operating Procedures (OP's) of the Virginia Department of Corrections ("VDOC"), with a few exceptions not relevant here all issues are grievable [Dkt. No. 61, Critton Aff. ¶ 5].[3] Cavalieri, as a Virginia inmate, was required to exhaust the claims he raises in the instant complaint in accordance with grievance procedures provided in VDOC OP 866.1, which provides multiple levels of administrative remedies in the form of inmate grievances. Id., Enc. A. Pursuant to OP 866-7.13, an inmate must first attempt to resolve any issues informally. Prison officials must respond to the inmate's complaint within 15 days of receiving an informal complaint. See OP 866-7.13. After seeking informal resolution, an inmate may file a regular grievance within 30 days of the underlying incident or occurrence. See OP 866-7.14. Depending on the subject of the grievance, up to two additional levels of review by higher authorities within VDOC may be available if a regular grievance is rejected. See OP 866-7.15. Level I reviews are conducted by the Warden or Superintendent of the institution where the offender is confined, and if he is dissatisfied with that result he can appeal to Level II, where responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, including Cavlieri's, Level II is the

---

[3]Affiant A. Critton is the Institutional Grievance Coordinator at Sussex II. Id. ¶ 1.

final level of review. Id., Enc. A at 9-10.

Review of Cavalieri's grievance file by the Institutional Grievance Coordinator at Sussex II yielded the following information:

a. On May 27, 2017, Cavalieri submitted a regular grievance complaining that on May 11, 2017, the medical department had failed to provide him with the pain medication prescribed by the orthopedic surgeon, and had left him to suffer "agonizing pain" for 16 hours. Id., Enc. C. Cavalieri asserted that Health Services Administrator Lawson needed to acknowledge that she purposefully and negligently failed to provide him with medications which were available. Id.

Bailey provided a Level I response on June 8, 2017. He determined that the grievance was unfounded and there had been no violation of operating procedure. Id. As described above, he quoted the explanation of Lawson that Percocet is not used in the VDC because it is a highly abused drug, and in Cavalieri's case the institutional physician had prescribed Norco rather than adopting the surgeon's recommendation of Percocet. Id.

Cavalieri did not appeal that grievance to Level II. Id.

b. On August 3, 2017 Cavalieri submitted a regular grievance complaining about the policy requiring that he be evaluated before his prescriptions for back pain could be renewed. Id., Enc. D. Bailey provided a Level I response on August 29, 2017, determining that the grievance was unfounded and that there had been no violation of operating procedure. Bailey included the explanation of Health Services Administrator Williams that Cavalieri's back pain was not considered a chronic condition.

Cavalieri did not appeal that grievance to Level II, id., nor did he file grievances of the denial of the following two complaints.

c. On August 7, 2017 Cavalieri submitted an informal complaint, asserting that because the medical department had allowed his prescriptions to expire he was in constant pain and

suffering diminished mobility and loss of sleep. Id., Enc. E. He received a response stating that "Baclofen and Mobic are not chronic care medication and are not automatically renewed. A request must be written and reviewed by the MD." Id.

d. On August 14, 2017 Cavalieri submitted another informal complaint, complaining that the medical department had done nothing about the "medication/prescription" for his back pain. Id., Enc. F. He received a response stating that his Mobic prescription was renewed on August 16, 2017. He did not file a formal grievance for this claim.

Because Cavalieri did not fully pursue his administrative remedies, none of his claims have been administratively exhausted. See Shouse v. Bohem, No. 7:12cv00479, 2013 WL 2237784, at *3 (W.D. Va. May 21, 2013) (noting that pursuant to VDOC procedures, appeal of a Level I response to Level II is required for proper administrative exhaustion).

In Cavalieri's opposition to Bailey's summary judgment motion, he argues that completion of the grievance process was unnecessary because he received post-surgical pain medication on May 12, 2017 and his prescriptions for his back medications were renewed before Bailey responded to the Level I grievance complaining about the policy that required Cavalieri to be evaluated before his prescriptions could be renewed [Dkt. No. 75 at 8-9]. Therefore, because both issues were "temporal," and "there were no further available remedies" he could have obtained through completing the grievance process, he is excused from exhausting these claims. Id. at 9.

Cavalieri's argument is without merit. Pursuant to the PLRA, exhaustion of administrative remedies is mandatory and is required "regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion is required even if the administrative remedies do not meet federal standards, are not "plain, speedy, and effective," and regardless of whether the relief the plaintiff seeks is available through the

9

grievance process. Porter v. Nussle, 534 U.S. 516, 524 (2002). Because the undisputed evidence demonstrates that Cavalieri failed to exhaust administrative remedies, Bailey is entitled to summary judgment. Id. at 1853 (PLRA states in "unambiguous terms" that there are "no limits on an inmate's failure to exhaust"); Ross v. Blake, 136 S.Ct. 1850, 1856-58 (2016) ("... mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes foreclosing judicial discretion."); Anderson v. XYZ Corr. Health Servs., 407 F.3d 674 (4th Cir. 2005) (courts have no discretion to dispense with exhaustion requirement in cases where PLRA applies); Davis v. Stanford, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005) (Hilton, J.) (inmate must exhaust administrative remedies even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks), aff'd, 127 F. App'x 680 (4th Cir. May 10, 2005).

B. No Eighth Amendment Claim

Even if Cavalieri had properly exhausted his claims, the undisputed material facts demonstrate that Bailey would have no liability for violating Cavalieri's Eighth Amendment rights. Cavalieri does not allege that Bailey was personally involved in any decision regarding whether or when to provide him with medications, and Bailey's affidavit confirms that as a non-medical prison official he had no such involvement. In this circuit, "a medical treatment claim cannot be brought against non-medical personnel unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." Lewis v. Anemone, 926 F.Supp. 69, 73 (W.D. Va. 1996), citing Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Cavalieri attempts to refute this principle by arguing that "every single time that Bailey has partaken in a grievance decision he has DIRECTLY intervened in a medical decision...." [Dkt. No. 75 at 2-3]. Applicable authorities do not support Cavalieri's theory. It is well established that Virginia inmates have no constitutionally-protected right to a grievance

procedure, Adams v. Rice, 40 F. 3d 72, 75 (4th Cir. 1994), and "there is no liability under § 1983 for a prison administrator's response to a grievance or appeal." Brown v. Va. Dep't of Corr., No. 6:07-CV-00033, 2009 WL 87459, at *13. (W.D. Va. Jan. 9, 2009). Contrary to Cavalieri's assertion, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation." Id. (quoting George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (alteration in original); accord Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a prison official's "after-the-fact denial of a grievance falls far short of establishing § 1983 liability."). Moreover, "[i]f a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008). Here, where it is uncontroverted that Bailey knew that Cavalieri was under the care of prison medical officials and based his denial of Cavalieri's grievances on review of information provided to him by those officials, he could have no § 1983 liability for those actions even if Cavalieri's claims had been properly exhausted.

C. Qualified Immunity

Because Cavalieri has failed to establish that Bailey violated his constitutional rights, the Court need not address Bailey's reliance on the doctrine of qualified immunity. See Shabazz v. Va. Dep't of Corr., No. 3:10cv638, 2013 WL 1098102, at *9 n. 20 (E.D. Va. Mar. 15, 2013); Long v. Beres, No. 3:10cv532, 2013 WL 139342, at *5 (E.D. Va. Jan. 19, 2013).

D. Tort and Breach of Contract Claims

To the extent that Cavalieri's characterization of Bailey's actions as negligent may be viewed as his attempt to assert a tort claim arising under Virginia state law, the Court finds that it is appropriate to dismiss that claim without prejudice. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."). Similarly, dismissal of Cavalieri's

pendant breach of contract claim is warranted. Size, Inc. v. Network Sol., Inc., 255 F. Supp. 2d 568 (E.D. Va. 2003). Accordingly, the negligence and breach of contract claims will be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(h)(3).

## II. Cavalieri's Pending Motions

Also pending before the Court are four motions by Cavalieri. Two concern the failure to serve a number of defendants who are employees of Armor Correctional Health Services [Dkt. Nos. 80-81].[4] Summonses were issued to those defendants at Sussex II, and all were returned unexecuted by the Marshal with the notation that process had to be served at an address in Miami, Florida [Dkt. No. 44]. Cavalieri has moved for an extension of time to serve these individuals and for an order compelling officials at Sussex II to provide the Marshal with current addresses for them [Dkt. Nos. 80-81]. Because Cavalieri's failure to properly exhaust his claims is fatal to his ability to litigate them in federal court, attempts to serve any additional defendants would be futile. Therefore, his motions concerning service of process will be denied as moot. Similarly, Cavalieri's Motion for Reconsideration [Dkt. No. 84] of the denial of earlier motions seeking discovery, as well as his Motion for Judgment on the Pleadings as to the Motion for Reconsideration [Dkt. No. 91] will be denied as no further discovery is warranted in this lawsuit.

## III. Remaining Defendants

On February 6, 2019, an Order was entered directing defendant Andrea Williams, a Health Services Administrator at Sussex II, to file a dispositive motion within 30 days [Dkt. No. 99]. On February 12, 2019, defendant Dr. Abbott's Motion to Dismiss was denied, without prejudice to her ability to file motion for summary judgment within 30 days [Dkt. No. 100].[5]

---

[4]As the docket reflects, Waivers of Summonses were returned unexecuted as to these individuals [Dkt. Nos. 23-30].

[5]Abbott did not argue in her Motion to Dismiss that Cavalieri failed to exhaust his claims.

Because the uncontroverted evidence now before the Court demonstrates that Cavalieri failed to exhaust his claims, he cannot prevail against any defendant, and it would be a waste of resources for Williams and Abbott to file motions for summary judgment. Accordingly, the orders requiring them to do so will be vacated.

## IV. Conclusion

For the above stated reasons, this civil action will be dismissed by an Order to be issued with this Memorandum Opinion.

Entered this 25th day of February 2019.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge